UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| NAUTILUS HOLDINGS LIMITED, et al., | Case No. 14-22885 (RDD) |
| Debtors.[1] | |
| | (Jointly Administered) |

## AMENDED FINAL ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION

Upon the motion (the "Motion")[2] of the Debtors for entry of interim and final orders seeking, among other things:

(i)    authorization for the Debtors to use "cash collateral" as that term is defined in section 363 of the Bankruptcy Code (which shall include, but not be limited to, all proceeds of Prepetition Collateral (as defined herein) and any and all cash of any kind, whether in reserved accounts, blocked accounts or otherwise, including, without limitation, any prepetition cash and cash equivalents), in which certain parties have a Prepetition Lien (as defined herein) or other interest, whether existing on the Petition Date (as defined below) or arising pursuant to the

---

[1]    The Debtors and, where applicable, the last four digits of their Hong Kong taxpayer identification codes are as follows: Nautilus Holdings Limited, Nautilus Holdings No. 2 Limited, Nautilus Shipholdings No. 1 Limited, Nautilus Shipholdings No. 2 Limited, Nautilus Shipholdings No. 3 Limited, Able Challenger Limited (8877), Charming Energetic Limited (0936), Dynamic Continental Limited (0928), Earlstown Limited (1898), Findhorn Osprey Limited (8075), Floral Peninsula Limited (4549), Golden Knighthead Limited (6376), Magic Peninsula Limited (0950), Metropolitan Harbour Limited (7969), Metropolitan Vitality Limited (9019), Miltons Way Limited (6180), Perpetual Joy Limited (0897), Regal Stone Limited (3636), Resplendent Spirit Limited (8114), Superior Integrity Limited (0934), and Vivid Mind Limited (7935). The Debtors maintain offices at 445 Hamilton Avenue, 11th Floor, White Plains, New York, 10601; 35th FL, Citicorp Centre, 18 Whitfield Road, North Point, Hong Kong; 23rd FL, 248 Queen's Road East, Wanchai, Hong Kong; and Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First-Day Declaration.

1

interim orders (the first such interim order [Docket No. 27], the "First Interim Order," the second

such interim order [Docket No. 61], the third such interim order [Docket No. 74], the fourth such

interim order [Docket No. 107], the fifth such interim order [Docket No. 133]), the final order

[Docket No. 149] (the "Final Order"), and this amended final order (the "Amended Final Order,"

and collectively with the interim orders and the Final Order, the "Cash Collateral Orders"), or

otherwise (the "Cash Collateral");

(ii)    authorization for the Debtors to grant, as of the Petition Date, certain adequate

protection to the Agents and Secured Parties (each as defined herein) with respect to, *inter alia*,

such use of their respective Cash Collateral, to the extent of any diminution in the value of their

respective interests in their collateral (including their Cash Collateral), as required by the

Bankruptcy Code;

(iii)    modification of the automatic stay imposed by section 362 of the Bankruptcy

Code solely to the extent necessary to permit the Debtors and the Secured Parties to implement

and effectuate the terms and provisions of this Amended Final Order;

(iv)    approval of certain stipulations by the Debtors as set forth in this Amended Final

Order with respect to the Prepetition Facilities (as defined below), and the liens and security

interests arising therefrom;

(v)    waiver of any right to surcharge the Prepetition Collateral pursuant to section

506(c) of the Bankruptcy Code or other applicable law; and

(v)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and

providing for immediate effectiveness of this Amended Final Order.

Upon consideration of the First-Day Declaration; and due and sufficient notice of the

Motion having been given under the particular circumstances; and it appearing that no other or

further notice is necessary with respect to the Court's entry of this Amended Final Order; and due, proper and sufficient notice of the hearings, if applicable, to approve this Amended Final Order and the opportunity for objection having been provided; and upon the evidence submitted and the record of the hearings on the Motion; and it appearing that the relief requested in the Motion and granted herein is warranted and in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    **Commencement of the Chapter 11 Cases**:  On June 23, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

B.    **Debtors in Possession; No Committee**:  Since the Petition Date, the Debtors have been managing and operating their business and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

C.    **Jurisdiction and Venue**:  This Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2).  The predicates for relief sought herein are section 105, 361, 362, 363, 507(b) and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Bankruptcy Rule 4001-2.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

        D.     **Notice**.  Notice of the hearings on the Cash Collateral Orders, where applicable,

and the relief requested in the Motion has been provided by the Debtors in accordance and

compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient

under the circumstances.  Without limiting the forgoing, due notice was afforded, whether by

facsimile, electronic mail, overnight courier or hand delivery, to parties in interest, including (a)

the Office of the United States Trustee for the Southern District of New York (the "U.S.

Trustee"); (b) the Agents and Secured Parties (and their respective counsel, if such counsel has

filed a notice of appearance in these Chapter 11 Cases, or if otherwise known); (c) those

creditors included on the consolidated list of thirty (30) largest unsecured creditors filed by the

Debtors in these Chapter 11 Cases; and (d) the Internal Revenue Service (collectively, (a)

through (d), the "Notice Parties").  In addition, all parties who have requested electronic notice

of filings in these cases through the Court's ECF system automatically received notice of the

Motion no later than the day after its filing with the Court.

        E.     **Debtors' Stipulations**.  The Debtors admit, acknowledge, agree and stipulate to

the following:

        1.     Prepetition Obligations.  As of the Petition Date, the Debtors were party to the

following debt facilities (each, a "Prepetition Facility" and, collectively, the "Prepetition

Facilities"), with the administrative agents (each, an "Agent") and lenders identified below

(together with the Agents, the "Secured Parties", and each a "Secured Party"), which Prepetition

Facilities are secured by substantially all of the assets and property of the applicable Debtors

obligated thereunder (the "Prepetition Liens"), including, without limitation, their respective

vessels listed below in subparagraphs (i)-(iv) of this paragraph E (the "Vessels"), charters,

revenues, earnings accounts, and insurance and other proceeds of the foregoing, to the extent and

as set forth more fully in the respective loan and security documentation (as applicable, the

"Prepetition Documents") for each of the Prepetition Facilities (collectively, the "Prepetition

Collateral" and all obligations under the Prepetition Facilities, collectively, the "Prepetition

Obligations"); the Debtors are organized into the following Silos (as defined below) which are

described more fully in the Motion and First-Day Declaration):

(ii)    Silo 1 - "HSH Silo"

    a.    Debtors Findhorn Osprey Limited, Earlstown Limited, Floral Peninsula
Limited, and Resplendent Spirit Limited, as borrowers; Nautilus
Shipholdings No. 1 Limited, as guarantor, and HSH Nordbank AG, as
lender, swap bank, agent and security trustee, are party to that certain
Loan and Swap Agreement relating to a US $150,304,000 facility dated
February 12, 2007, secured by, among other assets, the vessels *MV
Camellia, MV Dahlia, MV ANL Kardinia*, and *MV Violet*.

    b.    Debtor Miltons Way Limited, as borrower, Nautilus Shipholdings No. 1
Limited, as guarantor, and HSH Nordbank AG, as lender, swap bank,
agent and security trustee, are party to that certain Loan and Swap
Agreement relating to a US$61,200,000 facility dated July 6, 2007,
secured by, among other assets, the vessel *MV Columbia*.

(iii)    Silo 2 - "HSH Syndicate Silo"

    a.    Debtors Able Challenger Limited, Magic Peninsula Limited, Metropolitan
Vitality Limited, and Superior Integrity Limited, as borrowers; Nautilus

5

Shipholdings No. 1 Limited, Findhorn Osprey Limited, Earlstown

Limited, Floral Peninsula Limited, Resplendent Spirit Limited, as

guarantors; and HSH Nordbank AG and certain other parties, as lenders,

are party to that certain Loan and Swap Agreement dated April 12, 2007

relating to a facility for the lower of (i) US$237,728,000 and (ii) the

aggregate of a percentage of certain vessel construction prices, secured by,

among other assets, the vessels *MV YM Oakland, MV YM Busan, MV YM*

*Antwerp*, and *MV YM Keelung*.

(iv)   <u>Silo 3</u> - "DVB Silo"

a.   Debtor Golden Knighthead Limited, as borrower; Nautilus Shipholdings

No. 2 Limited, as guarantor; and DVB Bank SE (f/k/a DVB Bank AG), as

lender, swap bank, agent and security trustee, are party to that certain

Loan and Swap Agreement relating to a US$91,237,500 facility dated July

11, 2007 secured by, among other assets, the vessel *MV Texas*.

b.   Debtor Metropolitan Harbour Limited, as borrower; Nautilus Shipholdings

No. 2 Limited, as guarantor; and DVB Bank SE (f/k/a DVB Bank AG), as

lender, swap bank, agent and security trustee, are party to that certain

Loan and Swap Agreement relating to a US$91,237,500 facility dated July

11, 2007 secured by, among other assets, the vessel *MV Washington*.

(v)   <u>Silo 4</u> - "Citi Silo"

a.   Debtors Vivid Mind Limited, Perpetual Joy Limited, Regal Stone Limited,

Charming Energetic Limited, and Dynamic Continental Limited, as

borrowers; Nautilus Shipholdings No. 3 Limited, as guarantor; and

Citibank, N.A. and Bank of Scotland plc, as swap banks, Citibank

International plc, as agent, Citibank, N.A., as security trustee, Citigroup

Global Markets Limited, as arranger, and Citibank, N.A., Bank of

Scotland plc, Lloyds TSB Bank plc, and Bayerische Hypo- und

Vereinsbank AG as lenders, are party to that certain Loan and Swap

Agreement relating to a US$375,007,950 facility dated September 25,

2007, as amended by that certain Supplemental Agreement dated

September 7, 2012, secured by, among other assets, the vessels *MV*

*Rotterdam, MV Hamburg, MV Venezia, MV Corcovado and MV Ital*

*Onesta.*

2.     <u>Validity of Prepetition Obligations and Prepetition Documents</u>.  As of the Petition

Date, (a) the Prepetition Obligations of the Debtors to the Agents and Secured Parties under the

respective Prepetition Facilities are legal, valid, binding and enforceable against the respective

Debtors; (b) the Prepetition Liens held by the respective Agents and Secured Parties are valid,

binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the

respective Prepetition Collateral for each Silo; (c) subject to any senior maritime liens, the

Prepetition Liens are senior in priority over any and all other liens on the Prepetition Collateral;

(d) except with respect to prepetition payments of "market disruption interest" in the DVB Silo,

the HSH Silo and the HSH Syndicate Silo, as to which the Debtors reserve all of their rights to

bring a claim for repayment (but not for consequential or punitive damages), no offsets,

challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the

Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or

Prepetition Obligations is subject to any challenge or defense including, without limitation,

impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement,

reduction, recharacterization, recovery, subordination (whether equitable or otherwise),

counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy

law, *provided, however*, the Debtors only have until October 23, 2014 (unless extended by

agreement between the Debtors and the relevant Agent, without the necessity of further court

order) to assert any such claims with respect to prepetition payments of "market disruption

interest", *provided, further*, all parties' rights and defenses with respect to such claims (including

that they were waived in prior court orders or otherwise) are fully reserved; and (e) except with

respect to prepetition payments of "market disruption interest" in the DVB Silo, the HSH Silo

and the HSH Syndicate Silo, as to which the Debtors reserve all of their rights to bring a claim

for repayment (but not for consequential or punitive damages), the Debtors and their estates have

no claims, objections, challenges, causes of actions, and/or choses in action, including, without

limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the

Bankruptcy Code, whether arising under applicable state law or federal law (including, without

limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other

claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy

Code), against the Secured Parties or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors, and employees arising out of, based upon, or related to their

loans under the Prepetition Facilities or the Prepetition Liens, through September 23, 2014,

*provided, however*, the Debtors only have until October 23, 2014 (unless extended by agreement

between the Debtors and the relevant Agent, without the necessity of further court order) to

assert any such claims with respect to prepetition payments of "market disruption interest",

*provided, further*, all parties' rights and defenses with respect to such claims (including that they

were waived in prior court orders or otherwise) are fully reserved.  The Prepetition Documents

are valid and enforceable by each of the Secured Parties, as applicable, for the benefit of the

Secured Parties against each of the applicable Debtors.  The Prepetition Obligations constitute

allowed claims against the applicable Debtors' estates.

F.    **No Liability to Third Parties.**    The Debtors stipulate and the Court finds that

none of the Secured Parties shall (i) have liability to any third party or be deemed to be in control

of the operation of any of the Debtors or to be acting as a "controlling person," "responsible

person," "owner or operator, " or "participant" with respect to the operation or management of

any of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code,

the United States Comprehensive Environmental Response, Compensation and Liability Act, as

amended, or any other Federal, state, or applicable international statute or regulation) or (ii) owe

any fiduciary duty to any of the Debtors, their creditors or estates, or shall constitute or be

deemed to constitute a joint venture or partnership with any of the Debtors.

G.    **Necessity of Relief Requested**.    The Debtors would not have sufficient available

sources of working capital to operate their business in the ordinary course or to maintain their

property without the use of Cash Collateral.  Without access to the Cash Collateral, the Debtors'

ability to manage, administer and preserve the Debtors' estates would be immediately and

irreparably harmed, thereby materially impairing their respective estates and creditors and the

possibility for a successful outcome in these Chapter 11 Cases.  The authority granted hereunder

therefore is necessary for the Debtors to avoid immediate and irreparable harm to the Debtors'

respective estates.  The terms of the use of Cash Collateral, including the grant of adequate

protection hereby, are fair and reasonable and reflect the Debtors' exercise of prudent business

judgment consistent with their fiduciary duties.  Accordingly, entry of this Amended Final Order

is in the best interests of the Debtors, their respective estates, or their creditors and other parties in interest and consistent with the Debtors' fiduciary duties.

Based upon the foregoing, and upon the record made before this Court at the hearings on the Cash Collateral Orders, where applicable, and good and sufficient cause appearing therefor,

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      Motion Granted.  The Motion is granted on a final basis as herein provided, and the use of Cash Collateral is authorized for each Debtor, subject and pursuant to the terms and conditions set forth in this Amended Final Order.

2.      Authorization to Use Cash Collateral.  The Debtors are authorized to use Cash Collateral subject to the terms hereof in accordance with and for the purposes set forth in a Budget (as defined below), until the occurrence of the Termination Date (as defined below). To the extent a Debtor does not use the cash projected for a particular week or for a particular purpose in a Budget (as defined below), such Debtor shall be authorized to use such Cash Collateral in subsequent weeks, in addition to any amounts already budgeted for such future weeks, and for any other purpose in the Budget (as defined below).  Nothing contained in the Cash Collateral Orders authorizing the Debtors' use of Cash Collateral during the period after the Petition Date shall constitute a consent or waiver of any rights, claims, causes of action or remedies of any Agent or Secured Party with respect to any Debtor's use of Cash Collateral during the period prior to the Petition Date.

3.      Budgets.  During the period of the Debtors' authority to use Cash Collateral until the Termination Date, the Debtors shall provide each Agent with its applicable rolling updated 13-week cash flow forecast and budget which shall, in each case, be in a form consistent with prior cash flow forecasts and budgets, or otherwise reasonably acceptable to the respective

Agents (each, a "Budget"), within five (5) business days following the end of each week.  In the event of any dispute regarding the substance of any Budget, the applicable Debtors shall consult in good faith with the applicable Agent to resolve such dispute; if the applicable Debtors and any Agent are unable to resolve such dispute among themselves, the Agent may request the Court to resolve such dispute on shortened notice.  Each Budget shall be limited to cash receipts, the cash payment of operating costs and expenses (including, but not limited to, management fees), fees owed to the U.S. Trustee, and restructuring expenses, including professional fees and expenses.

4.      Periodic Reporting.  The Debtors shall, at the same time as they provide each Agent with its respective Budget, also provide to the Agents (a) a line-by-line variance report comparing the budgeted cash flows for the immediately prior week to such week's actual cash flows and (b) a report reflecting cumulative actual cash flows since the Petition Date.  The Debtors shall also provide the Agents with (a) the monthly financial reporting given to the U.S. Trustee, (b) financial reporting required under (and consistent with the requirements contained in) the Prepetition Documents to the extent reasonably available, and (c) any other information, reports or documents relating in any way to the Cash Collateral or other collateral of the Secured Parties as the applicable Agent may reasonably request.

5.      Termination.  Notwithstanding anything contained herein, the Debtors' authorization to use Cash Collateral hereunder shall automatically terminate on the date (such date, the "Termination Date"), which is the earlier to occur of (x) February 6, 2015 (the "Cash Collateral Expiration Date"), and (y) in the case of Cash Collateral associated with any Prepetition Facility, the date of occurrence of a Termination Event (as defined below) in respect of such Prepetition Facility.

11

6.      Termination Events.  The passing of five (5) business days (the "Notice Period")

after written notice (which may be given electronically), which notice period shall run

concurrently with any grace or notice periods set forth below, to the Debtors by the applicable

Agent (with copies provided to the other Agents) of the occurrence of any of the following shall

constitute a "Termination Event," solely with respect to the Prepetition Facility which is the

subject of such written notice, provided that, during the Notice Period, the Debtors may use Cash

Collateral to pay, with prior written notice to the applicable Agents, and subject to the Budget,

critical expenses necessary to operate, maintain and preserve the Vessels:

(a)      any of these Chapter 11 Cases shall be dismissed or converted to a chapter

7 case, or a chapter 11 trustee or an examiner with expanded powers pursuant to section 1106(b)

shall be appointed in any of the Chapter 11 Cases, or the Court shall abstain from hearing any of

these Chapter 11 Cases;

(b)      the Debtors shall fail to comply with any provision of this Amended Final

Order,  and such failure shall continue unremedied (to the extent such failure is remediable) for

five (5) business days following written notice (which may be given electronically) from the

Agent in respect of the Prepetition Facilities and Silo adversely affected by such noncompliance;

(c)      the Court shall hereafter grant any application or motion or borrowing

request of the Debtors seeking to incur indebtedness from any party other than the Secured

Parties secured by a lien on, or otherwise having a claim against or recourse to, as the case may

be, the Debtors, the Prepetition Collateral or the Adequate Protection Collateral (as defined

below), unless such liens or claims are junior and subordinated to the Prepetition Liens, the

Prepetition Obligations, the Adequate Protection Liens (as defined below) and the Superpriority

Claims (as defined below), or the Court shall grant any application by any party seeking payment

12

of a claim of more than $50,000 allocated to each Vessel on a superpriority administrative claim basis without the consent of the applicable Agent;

(d)    the entry of an order by this Court or any other court having jurisdiction to do so granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow a holder or holders of any security interest in the Prepetition Collateral to foreclose or otherwise realize upon any such security interests;

(e)    any Vessel is arrested, confiscated, seized, taken in execution, impounded, forfeited, detained in exercise or purported exercise of any possessory lien or other claim, or otherwise taken from the possession of the applicable Debtor, and such Vessel is not returned to the possession of, or retrieved or repossessed by, the applicable Debtor for use and operation within five (5) business days;

(f)    the entry of an order by this Court or any other court having jurisdiction to do so (i) authorizing the sale of all or substantially all of a Debtor's assets, or (ii) authorizing any other material sale or disposition of any of the Prepetition Collateral;

(g)    any Debtor shall make any payment (including "adequate protection" payments) on or in respect of any prepetition indebtedness other than pursuant to the Cash Collateral Orders or any other interim or final order entered with respect to the Debtors' "first day" motions;

(h)    the registration of any Vessel under the laws and flag of its flag is cancelled or terminated without the prior written consent of the applicable Agent and not restored within five (5) business days;

(i)    any Debtor or any other person fails or omits to comply with any requirements of the protection and indemnity association or other insurer with which a Vessel is

entered for insurance or insured against protection and indemnity risks (including oil pollution risks) to the effect that any cover (including, without limitation, any cover in respect of liability for environmental claims arising in jurisdictions where such Vessel operates or trades) is cancelled and not renewed or replaced within five (5) business days;

(j)     the entry of an order of this Court or any other court having jurisdiction to do so amending, supplementing, staying, vacating, reversing, revoking, rescinding, reconsidering or otherwise modifying this Amended Final Order, without the express written consent of each Agent;

(k)     the entry of an order of this Court approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation or disposition of any Prepetition Collateral;

(l)     the Adequate Protection Liens (as defined below) and the Superpriority Claims (as defined below) granted to the Agents and the Secured Parties shall cease to be valid, perfected and enforceable in all respects, or any Debtor shall assert the invalidity or unenforceability of any of the Adequate Protections Liens; or

(m)     any Debtor shall seek to, or shall support (in any such case by way of, inter alia, any motion or other pleading filed with this Court or any other writing to another party in interest executed by or on behalf of any Debtor) any other person's motion to disallow or subordinate in whole or in part any Agent's or any Secured Party's claim in respect of Prepetition Obligations or to challenge the validity, enforceability, perfection or priority of the liens in favor of any Agent of any Secured Party (including, without limitation, any Prepetition Liens).

Upon the occurrence of a Termination Date, the Debtors shall no longer have the right to use Cash Collateral except for the payment of sums subject to the Carve-Out (as defined below), and the applicable Secured Parties may file a motion to lift the automatic stay so that they may exercise all remedies under the Prepetition Documents and applicable law, or for other appropriate relief, which motion shall be heard by the Court on an emergency basis (subject to the Court's schedule) on five (5) business days' notice, it being understood that the Secured Parties may seek such relief on less than five (5) business days' notice if necessary to preserve the collateral or in other exigent circumstances; *provided, however,* that the rights of the Debtors to oppose such relief on any basis, including any request for emergency relief on less than five (5) business days' notice, are fully reserved in all respects.  The right of the Debtors to seek nonconsensual use of Cash Collateral, and the right of any Secured Party to oppose such request, in each case on any basis, upon the occurrence of the Termination Date, are fully reserved.

7.     Adequate Protection.  The Agents and Secured Parties shall receive, until the indefeasible repayment of the Prepetition Obligations in full, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and as a condition to the use of Cash Collateral and other Prepetition Collateral, and as adequate protection for and to the extent of any diminution of their valid, enforceable and non-avoidable interests in their Prepetition Collateral, including but not limited to, such Cash Collateral, including as a consequence of the Debtors' sale, lease or use thereof (or other decline in value) in each case to the extent required by the Bankruptcy Code ("Diminution"), and each of the Agents and Secured Parties are hereby granted, *nunc pro tunc* as of the Petition Date, in each case solely against the Debtor(s) and the assets thereof that are obligors under such Agent's and Secured Parties' respective Prepetition Facilities, notwithstanding anything in the following subparagraphs to the contrary:

15

(a)    <u>Superpriority Claims</u>.  Allowed senior administrative expense claims (the "<u>Superpriority Claims</u>") with priority over any and all administrative expenses, adequate protection claims and all other claims against such Debtors, now existing or hereafter arising, of any kind whatsoever, as provided under section 507(b) of the Bankruptcy Code, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and the DIP Superpriority Claims, as defined in the Interim Order (I) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001 and 9014 and (II) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code (the "<u>DIP Order</u>"), in the amount and to the extent of any Diminution; <u>provided</u> that all Superpriority Claims shall be subject only to the Carve-Out.  The Superpriority Claims shall be payable from all property of the applicable Debtor's estates, including any proceeds of avoidance actions under chapter 5 of the Bankruptcy Code.

(b)    <u>Adequate Protection Liens</u>.  Effective as of, and continuing from, the date of entry of the First Interim Order, in each case without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by an Agent of any property, the following security interests and liens in the amount and to the extent of any Diminution (including the use of Cash Collateral, to the extent such use constitutes Diminution), which liens are and shall be in each case senior to all other liens, including the DIP Liens (as defined in the DIP Order), and shall be subject only to the Carve-Out (all property identified in clauses (i) through (iii) below being collectively referred to as the "<u>Adequate Protection Collateral</u>"; and all such liens and security interests granted pursuant to this Amended Final Order, the "<u>Adequate Protection Liens</u>"):

16

(i)  <u>Replacement Lien</u>.  Valid, binding and enforceable, fully perfected first priority replacement liens on, and security interests in, all of the respective Debtors' assets to the same extent, priority and enforceability held by the Agents for the benefit of their respective Secured Parties as of the Petition Date, including first priority liens and security interests in and on all postpetition proceeds, products, offspring or profits of the applicable Prepetition Collateral.

(ii)  <u>Lien on Unencumbered Property</u>.  A valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which each of the respective Debtors has an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date, including any proceeds of avoidance actions under chapter 5 of the Bankruptcy Code.

(iii)  <u>Liens Junior to Existing Liens</u>.  A valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property in which each of the respective Debtors has an interest, not constituting the Prepetition Collateral, whether now existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected and unavoidable liens (if any) in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)  <u>Liens Senior to Other Liens</u>.  The Adequate Protection Liens shall not be (i) subject or subordinate to any lien or security interest that is avoided and preserved for the

17

benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) except for the Carve-Out (as defined below), subordinated to or made pari passu with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise, including any postpetition financing liens.

(d)    <u>Fees and Expenses</u>.  (i) The Agents shall receive from their respective borrower or guarantor Debtors reimbursement of all reasonable fees and expenses incurred or accrued, whether prior to or after the Petition Date, by the Agents, including, without limitation the reasonable and documented fees and expenses incurred by counsel and, if any, financial advisor to each Agent; and (ii) Citibank, N.A., as security trustee under the Citi Silo Prepetition Facility shall receive from its respective borrower or guarantor Debtors reimbursement of all reasonable and documented fees and expenses incurred or accrued, whether prior to or after the Petition Date, including but not limited to (a) fees of counsel to the security trustee, (b) the security trustee's own customary fees, charges and disbursements and (c) the annual fee of $20,000 payable to the security trustee on or before September 26, 2014 (the amounts in clauses (i) and (ii), collectively, the "<u>Fees and Expenses Payments</u>"); *provided, however*, (i) Fees and Expenses Payments for fees and expenses incurred from and after September 20, 2014 shall only be paid for the Citi Silo, the DVB Silo, and the HSH Syndicate Silo to the extent that there is projected to be an average of at least $1,000,000 of available ending cash (after giving effect to the payment of Fees and Expenses Payments described in this paragraph) per vessel in a particular Silo (as defined below) in the then-current Budget for such month, provided further that the calculation of minimum cash at each Silo shall be determined by the applicable borrower or guarantor Debtors (and in good faith consultation with the applicable Agents), and such determination shall be conclusive absent manifest error; and (ii) Fees and Expenses Payments

18

shall only be paid for the HSH Silo to the extent accrued through September 19, 2014, and shall

be paid first out of the forty percent (40%) of the Management Fee pooled or to be pooled

through January 15, 2015, at Nautilus Holdings No. 2 Limited that is attributable to the HSH

Silo.  None of the fees and expenses payable pursuant to this subparagraph (d) shall be subject to

separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness

of any such fees and expenses or under section 506(b) of the Bankruptcy Code) or the U.S.

Trustee Guidelines and no recipient of any such payment shall be required to file any interim or

final fee application with respect thereto or otherwise seek the Court's approval of any such

payments.  The Debtors shall pay, except as otherwise agreed to with a particular Agent, the fees

and expenses provided for in this subparagraph (d) promptly (but no later than thirty (30) days)

after invoices for such fees and expenses shall have been submitted to counsel to the Debtor.

Copies of the invoices submitted to the Debtor for such fees and expenses to the extent incurred

after the Petition Date shall be provided by the Agents to the U.S. Trustee contemporaneously

with the delivery of such invoice to the Debtors; provided that the Debtors or the U.S. Trustee

shall have ten (10) business days to object to such fees and expenses and if prior to the expiration

of such ten (10) business day period the Debtors or the U.S. Trustee shall have objected in

writing to such fees and expenses, then the Debtors shall pay only the undisputed portion (if any)

of such fees and expenses and such objection shall be resolved by the Bankruptcy Court upon

notice and a hearing.

    (e) <u>Interest</u>.  Effective as of the end of the first full calendar month after entry

of this Amended Final Order, to the extent that there is projected to be an average of at least

$1,000,000 of available ending cash (after giving effect to the contemplated postpetition interest

and swap payments described in this paragraph) per vessel in a particular Silo (as defined below)

in the then-current Budget for such month, the applicable borrower or guarantor Debtors shall make postpetition interest and swap payments (including in respect of the first such payment any postpetition interest or swap payments which have accrued but remain unpaid) to the applicable Agent under the applicable Prepetition Facility (such interest and other payments, together with the Fees and Expenses Payments, the "Adequate Protection Payments"); provided, however, that the calculation of minimum cash at each Silo shall be determined by the applicable borrower or guarantor Debtors (and in consultation with the applicable Agents), and such determination shall be conclusive absent manifest error.

(f)    506(b) Recharacterization.  All parties reserve their rights to argue that, in the event that any Adequate Protection Payment is challenged by a party in interest with standing to do so, under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision or on any other basis, such payments may be recharacterized and applied as payments of principal owed under the applicable Prepetition Facility pursuant to further order entered by this Court.

(g)    Information Rights.  The Debtor shall maintain separate books and records regarding the cash receipts and disbursements of each of the Vessels and each Debtor's estate. In addition to, and without limiting whatever rights to access the Secured Parties have under their respective Prepetition Documents, the Debtors shall permit representatives, agents and/or employees of the Agents upon prior reasonable notice (i) to have reasonable access to the Debtors' properties and other collateral of any Debtor and have access to the Debtors' personnel and provide to such persons all such non-privileged information as they may reasonably request from time to time; (ii) to have reasonable access to examine the Debtors' books and records; and (iii) to have reasonable access to discuss the Debtors' affairs, finances, and condition with the

20

Debtors' officers and financial advisors. Any information provided to the Agents, their agents or their employees pursuant to this paragraph shall be kept confidential.

8.      <u>Insurance on Assets</u>.  The Debtors shall provide continued maintenance of and appropriate insurance on the Debtors' assets (including Vessels), in the amounts consistent with the Debtors' prepetition practices and as set forth in the applicable Prepetition Documents.

9.      <u>Cash Management</u>.  The Debtors shall maintain their cash management system consistent with the proposed order attached to the *Debtors' Motion for Interim and Final Orders Under 11 U.S.C. §§ 105, 345, 363, 364, 503, 1107, and 1108 (I) Authorizing Continued Use of Existing Cash Management System, Bank Accounts, Business Forms, and Payment of Related Prepetition Obligations, (II) Waiving Investment and Deposit Requirements* and any related orders entered by the Court**.**

10.     <u>Synergy Management Fee</u>.  Except as otherwise provided for herein, during the term of this Amended Final Order (a) sixty percent (60%) of the management fees (the "<u>Management Fee</u>") owed to Synergy Management Services Limited ("<u>Synergy</u>") shall be paid to Synergy in the ordinary course of business and (b) forty percent (40%) of the Management Fee shall be pooled at Nautilus Holdings Limited and Nautilus Holdings No. 2 Limited (the "<u>Pooled Management Fee</u>"), but not be paid out to Synergy, until further order of the Court.  The Debtors and the Agents shall have a continuing lien on their respective portion of the Pooled Management Fee until such time as the Pooled Management Fee is determined to be earned by and payable to Synergy by final order of the Court.

11.     <u>Post-Petition Long-Term Charters</u>.  Each Debtor agrees, during the term of this Amended Final Order, to not enter into any time or consecutive voyage charter of its respective Vessels for a term which exceeds (or which by virtue of optional extensions may exceed) 13

months without the consent of its applicable lenders.  Each Debtor further agrees not, and not to

permit any affiliate (or allow its or any affiliate's respective officers, directors, employees,

agents, professionals, or advisors), to interfere with or otherwise take (or not to take) any action

that could materially adversely impact any long-term charter agreements presently in effect in

respect of any Vessels.

12.    <u>Confirmation and Priority of Adequate Protection Liens</u>.  Except as otherwise

provided herein, the Adequate Protection Liens shall be senior to all other security interests in,

liens on, and claims against any of the Adequate Protection Collateral, including any postpetition

financing liens.  The Adequate Protection Liens shall be enforceable against the Debtors, their

estates and any successors thereto, including without limitation, any trustee, other estate

representative or similar responsible person or similar designee or litigation trust appointed in

these Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion

of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the

foregoing.  The Adequate Protection Liens shall be (i) in continuation of and in addition to all

valid and enforceable liens and security interests now existing in favor of the Agents for the

benefit of the Secured Parties and not in substitution therefor; (ii) effective as of the Petition

Date; and (iii) deemed duly perfected without the necessity of filing in any country, state, county

or local recorder's office or elsewhere, any additional documents or notices to perfect such

postpetition liens and security interests.

13.    <u>Carve-Out</u>.  Notwithstanding anything to the contrary contained in this Amended

Final Order, or any other order of this Court, the liens and claims of or granted to the Agents or

the Secured Parties in respect of each of the Silos, either prepetition or post-petition, shall be

subject and subordinate to the payment, without duplication, of the following fees and claims

(the amounts set forth below, together with the limitations set forth therein, collectively, the

"Carve-Out"):

        (a)     the claims of the respective retained professionals of the Debtors in these

Chapter 11 Cases (collectively, the "Retained Professionals") for fees and expenses incurred at

any time on and after the Petition Date and prior to the occurrence of the Termination Date, shall

be apportioned in accordance with paragraphs 15(d)-(f) of this Amended Final Order, provided

that in each case, such fees and expenses of the Retained Professionals are ultimately allowed on

a final basis by this Court under sections 327, 328, 330, 331 or 363 of the Bankruptcy Code;

        (b)     (i) the claims of the Retained Professionals for fees and expenses which

were incurred on and after the occurrence of the Termination Date and which shall be

apportioned in accordance with paragraphs 15(d)-(f) of this Amended Final Order; provided that

in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a

final basis by this Court under sections 327, 328, 330, 331 or 363 of the Bankruptcy Code and do

not exceed $250,000 in respect of amounts allocated (in accordance with the agreed or court

ordered methodology) to any Silo; plus (ii) the fees and expenses incurred by any professionals

engaged by any successor to the Debtors, including, without limitation, any trustee appointed

under Chapter 11 or 7 of the Bankruptcy Code or any examiner with expanded powers, in an

aggregate amount not to exceed $62,500, with respect to any Silo; and

        (c)     the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy

Court pursuant to section 1930 of title 28 of the United States Code in respect of the Chapter 11

Cases.

        14.     Limitations on Use of Cash to Challenge Prepetition Liens and Claims.  None of

the Prepetition Collateral, any portion of the Carve-Out, any Cash Collateral or any other

amounts may be used for the payment of the fees and expenses of any person incurred in

challenging, or in relation to the challenge of, (i) any of the Agents' or Secured Parties' liens or

claims, or the initiation or prosecution of any claim or action against any of the Agents or the

Secured Parties, including any claim under chapter 5 of the Bankruptcy Code, and state law or

any foreign law, in respect of the Prepetition Facilities, and (ii) any claims or causes of actions

against the Agents or the Secured Parties under the Prepetition Facilities, or their respective

advisors, agents and sub-agents, including formal discovery proceedings in anticipation thereof,

and/or challenging any Prepetition Lien.

15.    <u>Silos</u>.  No transfer of cash, property or any other asset shall occur by and among

Debtors of different Silos[4] and no cash, property or any other asset of a Debtor from one Silo

shall be used to satisfy any obligations of a Debtor from another Silo.  To the extent that cash,

property or any other asset of a Debtor from one of the Silos (the "<u>Transferor Debtor</u>") is

transferred, in violation of this Amended Final Order if done without the consent of the

Transferor Debtor's lender, to a Debtor from another Silo (the "<u>Beneficiary Debtor</u>"):

(a)    The Transferor Debtor shall have (i) an allowed claim against the

Beneficiary Debtor equal to the amount of the transferred cash, property or assets under sections

364(c)(1) and 507(b) of the Bankruptcy Code, having priority over any and all administrative

expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, DIP

Superpriority Claims (as defined in the DIP Order), and adequate protection claims provided to

the Debtors' prepetition lenders, which claims shall bear interest at a market rate accruing from

and after the date such claim arises until repayment thereof (collectively, the "<u>Intercompany</u>

---

[4]    "Silos" shall mean collectively, the HSH  Silo, the HSH Syndicate Silo, the DVB Silo and the Citi Silo
(each a "Silo"), as such terms are defined in the Declaration of James A. Mesterharm Pursuant to Local
Bankruptcy Rule 1007-2 and in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings
[Docket No. 13].

Reimbursement Claim"), (ii) a joint and several right of contribution (an "Intercompany Contribution Right") against every other Debtor within the Silo of the Beneficiary Debtor pro rata in an amount equal to the applicable Intercompany Reimbursement Claim to the extent that such claim is not paid in full and the applicable Intercompany Lien (as defined below) is insufficient to satisfy such claim, and (iii) a senior, priming lien on all property of the Beneficiary Debtor's estate under Bankruptcy Code section 364(c) securing such Intercompany Reimbursement Claim and Intercompany Contribution Right (an "Intercompany Lien");

(b)    All Intercompany Reimbursement Claims, Intercompany Liens and Intercompany Contribution Rights shall be junior, subject and subordinate only to the Carve-Out; and

(c)    With respect to the effect of Intercompany Liens on any sale of property of the Debtors, (i) the Debtors may sell property, in accordance with Bankruptcy Code section 363(m) free and clear of any Intercompany Lien with such lien attaching to the sale proceeds in the same priority as existed in respect of the property sold, and (ii) the provisions of Bankruptcy Code section 363(k) shall not apply.

(d)    The Debtors agree that, except as provided in subparagraphs (e) and (f) immediately below, chapter 11 estate professional and advisory fees, including the Retained Professionals' claims for fees and expenses, incurred at any time on and after the Petition Date and prior to and including December 31, 2014, shall be allocated among the Debtors based upon the ratio between the relevant Debtor(s)' gross revenues for the year ended December 31, 2013 and the aggregate gross revenues for all of the Debtors for the year ended December 31, 2013 (the "Revenue-Based Allocation")[5]; provided, however, that all allowed fees of the Retained

---

[5]    The Revenue-Based Allocation is as follows: HSH Silo (10.7%), HSH Syndicate Silo (29.9%), DVB Silo (23.3%), and Citi Silo (36.2%).

Professionals incurred for the period ending December 31, 2014 except as set forth in paragraph

(e) below, shall in all events constitute the joint and several liability of all Debtors to the extent

provided for in any particular Retained Professional's engagement letter.  Notwithstanding

anything herein to the contrary, all payment and apportionment of Retained Professionals' fee

claims shall be subject to the DVB Term Sheet.

(e)     The chapter 11 estate professional and advisory fees, including Retained

Professionals' claims for fees and expenses, incurred on or after December 10, 2014 for

participation in the mediation pursuant to the "Mediation Referral Order", dated December 4,

2014, shall be allocated exclusively to the estates of Debtors Able Challenger Limited, Magic

Peninsula Limited, Metropolitan Vitality Limited, and Superior Integrity Limited, as borrowers;

and Nautilus Shipholdings No. 1 Limited, as guarantor, under the HSH Syndicate Silo.

(f)     The chapter 11 estate professional and advisory hourly fees, including the

Retained Professionals' claims, for fees and expenses incurred at any time on or after January 1,

2015 shall be allocated to the greatest extent possible to the applicable Debtor(s) for whose

principal benefit such Retained Professional's fees and expenses were incurred and any

remaining balance shall be allocated in accordance with the Revenue-Based Allocation.

Notwithstanding the foregoing, all fees and expenses of Blackstone Advisory Partners L.P. shall

be allocated in accordance with the Revenue-Based Allocation, regardless of when incurred.

16.     <u>Continuing Effect of Order</u>.  If any of the Chapter 11 Cases is dismissed,

converted, or substantively consolidated, such dismissal, conversion, or substantive

consolidation of these Chapter 11 Cases shall not affect the rights of the Secured Parties under

this Amended Final Order, and all of their rights and remedies hereunder shall remain in full

force and effect as if the Chapter 11 Cases had not been dismissed, converted, or substantively

consolidated.  If an order dismissing any of the Chapter 11 Cases under section 1112 of the

Bankruptcy Code or otherwise is at any time entered, such order shall provide or be deemed to

provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the

Prepetition Liens, the Superpriority Claims and the Adequate Protection Liens shall continue in

full force and effect and shall maintain their priorities as provided in this Amended Final Order

(and that such Superpriority Claims and the Adequate Protection Liens shall, notwithstanding

such dismissal, remain binding on all persons), and (y) this Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security

interests referred to in clause (x) above.

      17.   <u>Proofs of Claim</u>.  The Agents and the Secured Parties shall not be required to file

proofs of claim in any of the Chapter 11 Cases or Successor Cases (as defined below) for any

claim allowed herein.  Notwithstanding any order entered by the Court in relation to the

establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, the

Agents on behalf of themselves and the Secured Parties, respectively, are hereby authorized and

entitled, in each case in their respective sole discretion, but not required, to file (and amend

and/or supplement, as such respective Agents and Secured Parties see fit) a proof of claim and/or

aggregate proofs of claim in each of the Chapter 11 Cases or Successor Cases for any claim

allowed herein.  Any proof of claim filed by the Agents shall be deemed to be in addition to and

not in lieu of any other proof of claim that may be filed by any of the Secured Parties.  Any order

entered by the Court in relation to the establishment of a bar date for any claim (including

without limitation administrative claims) in any of the Chapter 11 Cases or Successor Cases shall

not apply to the Agents or the Secured Parties with respect to claims arising under or related to

the Prepetition Facilities.

18.    <u>No Marshaling/Applications of Proceeds</u>.  The Agents and the Secured Parties

shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with

respect to any of the Prepetition Collateral, as the case may be, and proceeds shall be received

and applied in accordance with this Amended Final Order notwithstanding any other agreement

or provision to the contrary.

19.    <u>Section 552(b)</u>.  The Agents and the Secured Parties shall each be entitled to all of

the rights and benefits of section 552(b) of the Bankruptcy Code, including, for the avoidance of

doubt, in respect of postpetition revenues and payments under charters of Vessels in effect on

and after the Petition Date, and the "equities of the case" exception under section 552(b) of the

Bankruptcy Code shall not apply to the Agents or the Secured Parties with respect to proceeds,

product, offspring or profits of any of the Prepetition Collateral.

20.    <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the

application of section 507(b) of the Bankruptcy Code in the event that the adequate protection

provided to the Agents and/or the Secured Parties hereunder is insufficient to compensate for any

Diminution of their respective interests in the Prepetition Collateral (including Cash Collateral)

during the Chapter 11 Cases or any successor cases to the Chapter 11 Cases including, but not

limited to, any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the

Chapter 11 Cases, or in any other proceedings superseding or related to any of the Chapter 11

Cases (collectively, "<u>Successor Cases</u>").

21.    <u>Section 506(c) Waiver</u>**.**  No costs or expenses of administration which have been

or may be incurred in any of the Chapter 11 Cases or any Successor Cases at any time shall be

charged against any Agents, Secured Parties, any of their respective claims, any Prepetition

Obligations, Adequate Protection Liens, Prepetition Liens or Prepetition Collateral, including

28

Cash Collateral, pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of the affected Agent.  Nothing contained in this Amended Final Order shall be deemed a consent by any Agent or any Secured Party to any charge, lien, assessment or claim against, or in respect of, the Prepetition Collateral, including Cash Collateral, under section 506(c) or 105(a) of the Bankruptcy Code, or otherwise.

22.      <u>Credit Bid</u>.  Each Agent on behalf of and at the direction of the applicable Secured Parties subject to the terms of the applicable Prepetition Facility, shall have the right to credit bid, pursuant to all of the terms of section 363(k) of the Bankruptcy Code, all of their respective allowed claims in connection with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under a chapter 11 plan.

23.      <u>Good Faith</u>.  Each of the Agents and each of the Secured Parties have acted in good faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code) in connection with this Amended Final Order and the other Cash Collateral Orders and their reliance on this Amended Final Order and the other Cash Collateral Orders has been and is in good faith.

24.      <u>No Release of Guarantors</u>.  Nothing contained in this Amended Final Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantor to any Agent or any Secured Party with respect to their respective obligations under any of the Prepetition Facilities.

25.      <u>No Waiver by Failure to Seek Relief; Right to Seek Additional Adequate Protection</u>.  The failure of any Agent or any Secured Party to seek relief or otherwise exercise its rights and remedies under this Amended Final Order, the other Cash Collateral Orders, any documents memorializing the respective Prepetition Facilities, or applicable law, as the case may

be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of any

Agent or any Secured Party.  This Amended Final Order is without prejudice to, and does not

constitute a waiver of, expressly or implicitly, the rights of the Secured Parties to request

additional forms of adequate protection at any time or the rights of the Debtors or any other party

to contest such request.

26.     <u>Modification of Automatic Stay</u>.  The automatic stay under Bankruptcy Code

section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of

this Amended Final Order, including, without limitation, to:  (a) permit the Debtors to grant the

Adequate Protection Liens and incur the Superpriority Claims; (b) permit the Debtors to perform

such acts as may be needed to assure the perfection and priority of the liens granted herein;

(c) permit the Debtors to incur all liabilities and obligations under the terms of this Amended

Final Order; and (d) authorize the Debtors to pay, and the respective Agents to retain and apply,

any payments made in accordance with the terms of this Amended Final Order.

27.     <u>Automatic Effectiveness of Liens</u>.  The Adequate Protection Liens shall not be

subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable,

and effective by operation of law as of the Petition Date, having the priority set forth in this

Amended Final Order, without any further action by the Debtors or the Secured Parties and

without the necessity of execution by the Debtors, or the filing or recordation, of any financing

statements, security agreements, vehicle lien applications, mortgages (including ship mortgages),

filings with the U.S. Patent and Trademark Office, the U.S. Copyright Office, or the Library of

Congress, or other documents or the taking of any other actions. If any Agent hereafter requests

that the Debtors execute and deliver to them financing statements, security agreements, collateral

assignments, mortgages, or other instruments and documents considered by such Agent to be

reasonably necessary or desirable to further evidence the perfection of the Adequate Protection

Liens, as applicable, the Debtors are hereby directed to execute and deliver such financing

statements, security agreements, mortgages, collateral assignments, instruments, and documents,

and the Prepetition Agents are hereby authorized to file or record such documents in their

discretion without seeking modification of the automatic stay under section 362 of the

Bankruptcy Code, in which event all such documents shall be deemed to have been filed or

recorded at the time and on the date of entry of this Amended Final Order.

28.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Amended

Final Order does not create any rights for the benefit of any third party, creditor, equity holder or

any direct, indirect, or incidental beneficiary.

29.     <u>Binding Effect of Amended Final Order</u>.  Immediately upon entry by the Court

(notwithstanding any applicable law or rule to the contrary), the terms and provisions of this

Amended Final Order shall become valid and binding upon the Debtors, the Agents and the

Secured Parties, all other creditors of any of the Debtors, and all other parties in interest and their

respective successors and assigns, including any trustee or other fiduciary hereafter appointed in

any of these Chapter 11 Cases, or upon dismissal of any of these Chapter 11 Cases.

30.     <u>Survival</u>.  The provisions of this Amended Final Order and any actions taken

pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in

any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a chapter 7 case, or

(iii) dismissing any of the Chapter 11 Cases, and, with respect to the entry of any order as set

forth in clause (ii) or (iii) of this paragraph 30, the terms and provisions of this Amended Final

Order as well as the Adequate Protection Liens and Superpriority Claim shall continue in full

force and effect notwithstanding the entry of any such order.

31.     <u>Effect of this Amended Final Order</u>.  This Amended Final Order shall take effect and be enforceable immediately upon entry.

32.     <u>Reservation of Rights</u>.  The terms, conditions, and provisions of this Amended Final Order are in addition to and without prejudice to the rights of the Agents and the Secured Parties to pursue any and all rights and remedies under the Bankruptcy Code, the respective Prepetition Facilities, or any other applicable agreement or law, including, without limitation, rights to (a) seek relief from the automatic stay, (b) seek an injunction, (c) oppose any future request for use of Cash Collateral, or of priority in favor of any other party, (d) object to any sale of assets, or (e) object to applications for allowance or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtors' estates.  Nothing in this Amended Final Order shall be construed to determine that any Secured Party is adequately protected, including with respect to the use of Cash Collateral provided hereunder notwithstanding any consent to or non-objection to such use or the entry of this Amended Final Order, and all rights of all parties in respect thereof are fully reserved.

33.     <u>Debtors' Authorization</u>.  The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Amended Final Order.

34.     <u>Retention of Jurisdiction</u>.  This Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Amended Final Order.

Dated:  White Plains, New York
            January 13, 2015

                                        /s/ Robert D. Drain_____
                                        UNITED STATES BANKRUPTCY JUDGE

1142977-NYCSR03A - MSW